897 So.2d 705 (2004)
FORD MOTOR CREDIT COMPANY
v.
Michael W. ARNOLD and Cynthia A. Arnold.
No. 2004 CA 0042.
Court of Appeal of Louisiana, First Circuit.
December 17, 2004.
*706 Kristen A. Brazzel, E. Wade Shows, Jo Ann Lea, Carlos A. Romanach, Baton Rouge, for Plaintiff-Appellee Ford Motor Credit Company.
Marti Tessier, Mandeville, for Defendants-Appellants Michael W. Arnold and Cynthia A. Arnold.
Before: CARTER, C.J., PETTIGREW, and McDONALD, JJ.
PETTIGREW, J.
In this case, defendants challenge the trial court's judgment granting summary judgment in favor of plaintiff and rendering a deficiency judgment against them. For the reasons that follow, we reverse and remand for further proceedings.

FACTS AND PROCEDURAL HISTORY
On March 21, 2000, defendants, Michael W. Arnold and Cynthia A. Arnold, entered into a Louisiana Simple Interest Property Retail Installment Contract ("the Contract") with the Grubbs Ford dealership in Bogalusa, Louisiana, to purchase a used 1998 Ford Ranger.[1] Grubbs Ford later assigned the Contract to plaintiff, Ford Motor Credit Company ("Ford Motor"). Pursuant to the terms and conditions of the Contract, the Arnolds agreed to make 36 monthly payments of $463.55.
When the Arnolds were unable to make the payments as required under the Contract, they surrendered the truck to Ford Motor. Thereafter, Ford Motor sold the truck at auction for the sum of $4,850.00 and credited the Arnolds' account for this amount. On January 10, 2003, Ford Motor filed the instant suit against the Arnolds for the balance remaining due on the account, $5,817.25, together with interest at the rate of 24 percent from the date of judicial demand until paid. Ford Motor also requested attorney fees in the amount of 25 percent of the principal and interest due and owing.
In response to Ford Motor's suit, the Arnolds propounded interrogatories and requests for production of documents to Ford Motor, including a request for the production of "[a]ny and all documents generated or associated with original lease or loan purchased by the plaintiffs, Michael *707 W. Arnold and Cynthia A. Arnold, of the vehicle which is subject of suit." Thereafter, on March 10, 2003, the Arnolds answered Ford Motor's suit, generally denying the allegations contained therein. The Arnolds maintained that when they were unable to make the required payments on the truck, they offered to return it to Ford Motor. They acknowledged that they signed a document "which they could not read which must have been the Voluntary Surrender." The Arnolds further alleged that the Contract was usurious based on the 24 percent interest rate they were charged.
On June 2, 2003, Ford Motor filed a motion for summary judgment alleging that there were no genuine issues of material fact and that it was entitled to judgment on its principal demand as a matter of law. In support of the motion, Ford Motor submitted a copy of the original note, the affidavit of a Ford Motor representative establishing the principal sum due and the applicable interest rate, and the affidavit of Ford Motor's attorney supporting the request for attorney fees. The trial court set the motion for hearing on July 22, 2003. On June 17, 2003, the Arnolds filed the affidavit of Mr. Arnold and a rule to compel against Ford Motor, alleging that Ford Motor had failed to produce the original lease-purchase documents. The court set the Arnolds' rule for hearing on July 22, 2003.
Thereafter, Ford Motor's motion for summary judgment and the Arnolds' rule to compel were continued to September 23, 2003, at which time the court heard argument from counsel for both sides. The court granted Ford Motor's motion for summary judgment and declared moot the Arnolds' rule to compel. In a judgment signed on September 23, 2003, the court rendered a deficiency judgment in favor of Ford Motor and against the Arnolds for "$5,817.25, plus interest at [the] rate of 24.000% per annum from January 10, 2003, until paid; together with attorney's fees in the amount of 25% on the principal and accruing interest thereon until paid; and for all costs of these proceedings." It is from this judgment that the Arnolds have appealed.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Johnson v. Evan Hall Sugar Co-op., Inc., 2001-2956, p. 3 (La.App. 1 Cir. 12/30/02), 836 So.2d 484, 486. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. La.Code Civ. P. art. 966(B). Summary judgment is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La.Code Civ. P. art. 966(A)(2); Thomas v. Fina Oil and Chemical Co., XXXX-XXXX, pp. 4-5 (La.App. 1 Cir. 2/14/03), 845 So.2d 498, 501-502. On a motion for summary judgment, the initial burden of proof is on the mover. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the nonmoving party must produce factual support sufficient to satisfy his evidentiary burden at trial. La.Code Civ. P. art. 966(C)(2). If the nonmoving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. Thomas, XXXX-XXXX at 5, 845 So.2d at 502.
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same *708 criteria that govern the trial court's determination of whether summary judgment is appropriate. Allen v. State ex rel. Ernest N. Morial-New Orleans Exhibition Hall Authority, XXXX-XXXX, p. 5 (La.4/9/03), 842 So.2d 373, 377. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Foreman v. Danos and Curole Marine Contractors, Inc., 97-2038, p. 7 (La.App. 1 Cir. 9/25/98), 722 So.2d 1, 4, writ denied, 98-2703 (La.12/18/98), 734 So.2d 637.

DISCUSSION
In the instant case, Ford Motor instituted suit to collect the alleged unpaid balance owed by the Arnolds as a result of the Arnolds' voluntary surrender of a vehicle financed by Ford Motor. According to Ford Motor's petition, the Arnolds "executed a Voluntary Repossession Agreement, which agreement states that FORD MOTOR CREDIT COMPANY `... may obtain a judgment to collect any remaining amount due under the obligation after subtracting the agreed upon value ...' from the defendant's account for the repossessed vehicle." Moreover, Ford Motor asserted the Voluntary Repossession Agreement "provided a guaranteed surrender value to the debtor of at least $4,550.00." After selling the vehicle at auction and crediting the Arnolds' account for $4,850.00, Ford Motor sought to collect the deficiency of $5,817.25, plus applicable interest and attorney fees.
Ford Motor later filed a motion for summary judgment, supported by a copy of the original note, the affidavit of a Ford Motor representative establishing the principal sum due and the applicable interest rate, and the affidavit of Ford Motor's attorney supporting the request for attorney fees. The Arnolds responded with a rule to compel against Ford Motor, alleging that Ford Motor had failed to produce the original lease-purchase documents. The matters proceeded to hearing on September 23, 2003, at which time counsel for the Arnolds argued that the Contract might well be a usurious contract because of the 24 percent interest rate charged therein. Noting that she was unable to discern which interest rate was applicable without the original lease-purchase documents, counsel for the Arnolds maintained that judgment on Ford Motor's motion should not be rendered until Ford Motor fully responded to the Arnolds' discovery requests. The trial court noted its sympathy for the Arnolds' position but found there were no genuine issues of material fact for trial. The court granted Ford Motor's motion for summary judgment and declared moot the Arnolds' rule to compel.[2]
On appeal, the Arnolds acknowledge that they were unable to make the required payments on the truck and that they offered to return the truck to Ford Motor. The Arnolds further submit that Mr. Arnold "apparently executed a voluntary surrender." Nonetheless, the Arnolds argue that the trial court erred in granting Ford Motor's motion for summary judgment without first compelling Ford Motor to produce the original lease-purchase documents.
*709 In response to the Arnolds' appeal, Ford Motor argues that the affidavit of its representative, establishing the principal sum due and the applicable interest rate, was of sufficient evidentiary quality to support its motion for summary judgment.[3] Thus, Ford Motor asserts, the burden shifted to the Arnolds to set forth specific facts showing that there was a genuine issue for trial. Ford Motor maintains that the Arnolds failed to meet this burden and that the trial court was correct in granting summary judgment in its favor.
The Contract executed by the Arnolds and Ford Motor constitutes a secured transaction under the current version of La. R.S. 10:9-102 et seq. Louisiana law defines a "security agreement" as "an agreement which creates or provides for a security interest." See former La. R.S. 10:9-105 (currently La. R.S. 10:9-102(a)(73)). As set forth in former La. R.S. 10:9-505(3) (currently at La. R.S. 10:9-620), when a secured party accepts the voluntary surrender of collateral subject to a security agreement, he is presumed to accept in full satisfaction of the underlying obligation unless he notifies the debtor, in writing or otherwise, of his intention to reserve in full his right to a deficiency judgment. Former Louisiana Revised Statutes 10:9-505(3) provided as follows:
The debtor's abandonment or surrender to the secured party of consumer goods subject to a security agreement, that is made after or in contemplation of the debtor's default shall be deemed to be a surrender for purposes of sale in accordance with the provisions of this Part 5. The secured party shall be presumed to have accepted the goods without the right to pursue a deficiency judgment unless he sends written notice or otherwise notifies the debtor within twenty days after he takes actual possession, to the effect that he is accepting possession of the goods with full reservation of deficiency rights.
Thus, in order to pursue a deficiency judgment, a secured party bears the burden of proving that he notified the debtor, within twenty days of taking actual possession of the collateral, of his intention to accept possession of the collateral with full reservation of his rights to a deficiency judgment.
Our review of the record before us reveals that Ford Motor failed to carry its burden of proof on the summary judgment. Thus, the burden never shifted to the Arnolds to set forth specific fact showing there was a genuine issue for trial. Based on the applicable provisions of Chapter 9 of Title 10, "Secured Transactions," Ford Motor could not successfully pursue a deficiency judgment against the Arnolds unless the Arnolds were provided with the notice required by former La. R.S. 10:9-505(3). Ford Motor alleges in its petition that the Arnolds executed a voluntary surrender wherein they agreed that Ford Motor could obtain a deficiency *710 judgment under the Contract. However, this document does not appear anywhere in the record and was not offered by Ford Motor in support of its motion for summary judgment. Accordingly, the trial court erred in granting summary judgment in favor of Ford Motor and rendering a deficiency judgment against the Arnolds.

DECREE
For the above and foregoing reasons, we reverse the judgment below and remand this matter to the trial court for further proceedings consistent with this opinion. All costs associated with this appeal are assessed against Ford Motor Credit Company.
REVERSED AND REMANDED.
NOTES
[1] According to the record, the Arnolds had previously executed a lease-purchase agreement, with a two-year term, pertaining to the same truck in 1998. It was at the end of this two-year term that the Arnolds decided to purchase the truck and entered into the Contract that is the subject of the instant appeal.
[2] We note that even if Ford Motor had been compelled to produce the original lease-purchase documents as requested by the Arnolds, the content of said documents would have no bearing on the issue before this court, i.e., whether Ford Motor was entitled to pursue a deficiency judgment against the Arnolds. Thus, although we agree with the Arnolds that the trial court erred in granting summary judgment in this case, we base our decision on reasons other than the failure of the trial court to compel Ford Motor to produce the original lease-purchase documents.
[3] Ford Motor cited to La. R.S. 10:9-629(a)(5) and (6) concerning the evidentiary requirements for judicial proceedings on a demand note with a security agreement. Chapter 9 of Title 10, "Secured Transactions," consisting of Parts 1 to 6, La. R.S. 10:9-101 to 10:9-605, was amended and reenacted by Acts 2001, No. 128, § 1, effective July 1, 2001, to consist of Chapter 9, "Secured Transactions," Parts 1 to 7, consisting of La. R.S. 10:9-101 to 10:9-710. The retail installment contract that forms the underlying basis of the instant suit was perfected on March 21, 2000, and thus controlled by the pre-amendment version of Chapter 9 of Title 10. Accordingly, at all pertinent times herein, La. R.S. 10:9-508(1)(e) and (f) outlined the evidentiary requirements for this case. With the 2001 amendments, these requirements were reenacted in La. R.S. 10:9-629(a)(5) and (6) with very few substantive alterations.