900 So.2d 227 (2005)
Larry DAUGHERTY, Plaintiff-Appellant
v.
MAGNOLIA ESTATES OF VICKSBURG, INC., Fleetwood Homes of Mississippi, Inc. and Barrett's Mobile Home Service, Defendants-Appellees.
No. 39,587-CA.
Court of Appeal of Louisiana, Second Circuit.
April 6, 2005.
Rehearing Denied May 5, 2005.
Crawford & Anzelmo, by Jefferson B. Joyce, Monroe, for Appellant.
Corkern & Crews, L.L.C., by Steven D. Crews, Jason O. Methvin, Natchitoches, for Appellee, Magnolia Estates of Vicksburg.
Porteous, Hainkel & Johnson, by Glenn B. Adams, Thomas M. Hayes, IV, New Orleans, for Appellee, Fleetwood Homes of Mississippi, Inc.
Belton, Houck & Associates, by Tracy W. Houck, Ruston, for Appellee, Barrett's Mobile Home Service.
Before STEWART, GASKINS and CARAWAY, JJ.
*228 CARAWAY, J.
In this case, the plaintiff/purchaser of a manufactured home sued the manufacturer, the dealer and the installer of the home after cracks and damages occurred to the home. Following the initial setup and leveling of the home by the dealer through its subcontract with the installer, the house became unlevel soon after the plaintiff constructed a porch that attached to the home. Blaming the plaintiff's addition of the porch as a probable cause of the problems, the three defendants moved for summary judgments which the trial court granted, dismissing plaintiff's suit. Finding that the plaintiff made no showing of a likelihood of prevailing in his claims against the manufacturer and the installer, we affirm the summary judgments granted in their favor. Nevertheless, we find genuine issues of material fact concerning the alleged failure of the dealer to provide the plaintiff with information concerning the construction and attachment of the porch to manufactured homes in violation of the seller's warranty of fitness under the Civil Code. The summary judgment in favor of the dealer/seller is reversed.

Facts
The plaintiff, Larry Daugherty ("Daugherty") appeals the trial court's rendition of summary judgment in favor of all three defendants in connection with his purchase of a new manufactured home in February 2000. Daugherty bought the manufactured home from Magnolia Estates of Vicksburg, Inc. ("Magnolia"), a Mississippi dealer. The home was manufactured by Fleetwood Homes of Mississippi, Inc. ("Fleetwood") and cost approximately $52,000. Upon Daugherty purchasing the home, Magnolia contracted with Barrett's Mobile Home Service, represented by Jack N. Barrett (collectively "Barrett"), to deliver and install the home at a site selected by Daugherty in Eros, Louisiana. Daugherty had lived in an older mobile home on the same site for a number of years.
The home was delivered on March 8, 2000, and installed the next day by Barrett. Subsequently, Daugherty hired a third party, Ben Stone, to construct a porch spanning one side of the home. The porch's dimensions were approximately as long as the home and between 12 and 14 feet wide. The evidence indicates that Daugherty desired that the roof lines of the home and the porch be tied together and that some of the weight of the porch was supported by the home. Construction on the porch began about two weeks after delivery of the home and was completed on April 13, 2000.
Daugherty began having problems with the leveling of the home beginning in July, which caused the doors either to not close or jam. According to paragraph 6 of Daugherty's petition which was not directly contested by Magnolia, "[i]n the latter part of July, 2000, the doors of plaintiff's home would not close and/or remained jammed, and Mr. Daugherty contacted Magnolia concerning this problem. Representatives of Magnolia inspected the home and informed Mr. Daugherty the home needed to be re-leveled."
On August 4, Daugherty hired Butch Woolsey to re-level the home. Woolsey noted there were several loose blocks on each row, and "a significant gap between the blocks and the frame of the mobile home," so that the home was not properly resting on its supports. The problems persisted although not as severely, and Woolsey returned about a month later to re-level the home a second time on September 7, 2000. Daugherty contacted Magnolia about ten days after that to report continued problems with the home.
Daugherty's petition alleges that beginning in December, new problems involving cracks in the ceilings and walls manifested *229 themselves in addition to the problems with the doors. When he contacted Magnolia in mid-December, Magnolia agreed to dispatch their installer, Barrett, to re-level the home. In January, Barrett allegedly refused to work on the home until Daugherty detached the porch from the home. During January and February, 2001, a deputy state fire marshal inspected the installation of the home and discovered some problems. At some point, the porch construction was reconfigured removing any of its weight from attachment to the home and Barrett attempted to repair the home on March 24, 2001.
On April 30, 2001, Daugherty sued the manufacturer, dealer and installer for damages. The petition alleged the existence of manufacturing defects in the home, faulty installation and Magnolia's breach of the implied warranty of fitness under La. C.C. art. 2524. Magnolia asserted a cross claim against Fleetwood for indemnity if either redhibitory defects were discovered in the home or for breach of the manufactured home warranty provided in La. R.S. 51:911.25. Both Magnolia and Fleetwood maintained that whatever problems Daugherty experienced with the home were due to improper site selection or the after-purchase addition of the porch in contravention of the manufacturer's owner's manual. Thereafter, Daugherty amended his petition to allege that the home's defects existed at the time Fleetwood delivered the home to Magnolia.
Daugherty asserts that he never received the owner's manual upon his purchase of the home or when the home was delivered to the site for installation. Barrett testified in his deposition that a portion of the Fleetwood Home Installation Manual specifically recommended the choice of a freestanding porch design and the use of support rails. Barrett further testified that the porch in question was not attached in a freestanding manner as recommended by the manual.
All three defendants moved for summary judgment. Daugherty opposed the motions. After a hearing, the trial court rendered judgment dismissing Daugherty's claims. It is from this judgment that Daugherty appeals.

Discussion
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no factual dispute. Ford Motor Credit Co. v. Arnold, 04-0042 (La.App. 1st Cir.12/17/04), 897 So.2d 705. Appellate courts review grants of summary judgment de novo, viewing the record and all reasonable inferences that may be drawn therefrom in the light most favorable to the non-movant; in ruling on a motion for summary judgment, the judge's role is not either to evaluate the weight of the evidence or to determine the truth of the matter, but to determine instead whether there is a genuine issue of triable fact. Atkins v. Shilo Enterprises, Inc., 39,100 (La.App. 2d Cir.12/15/04), 889 So.2d 487; Williston v. Noland, 03-2590 (La. App. 1st Cir.10/29/04), 888 So.2d 950. A genuine issue is one on which reasonable persons could disagree; all doubts should be resolved in the non-moving party's favor. Id.
The burden of proof remains with the movant. La. C.C.P. art. 966(C)(2). However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Id. Thereafter, if the adverse party fails to produce factual *230 support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. Id.
All new manufactured homes which are sold in the state must be in compliance with the Uniform Standards Code for Manufactured Housing ("USCMH"). La. R.S. 51:911.21, et seq. The USCMH contains the following warranty provisions:
§ 911.25. Warranty
A. Each new manufactured home, sold as such shall be covered by warranties that shall protect only the first retail purchaser of the manufactured home, for a period of one year from the date of purchase, in accordance with the terms of the warranty:
(1) The manufacturer shall warrant, in writing, that the manufactured home was in compliance with the Code and the requirements of this Part at the time of manufacture.
Further, the manufacturer shall warrant that the manufactured home was manufactured free from any defects in materials and workmanship as outlined in the Code.
(2) The installer shall warrant that the manufactured home was installed according to the Minimum Standards for Installation of Manufactured Homes (R.S. 51:912.21 et seq.).
(3) The manufacturer, retailer, or installer shall not be liable for any defect in the manufactured home which is the result of improper setup, moving, or defects in work or materials done or furnished by persons other than the manufacturer, retailer, or installer.
B. Manufactured homes sold as used manufactured homes shall not be covered by a warranty unless provided for in writing outlining the terms and conditions of the warranty.
C. The warranty required by this Part shall be in addition to and not in derogation of any other warranties, rights, and privileges which the buyer may have under any other law or instrument. The buyer may not waive his rights under this Part and any such waiver is hereby prohibited as contrary to public policy and shall be unenforceable and void.
Additionally, La. R.S. 51:912.21, et seq., the Minimum Standards for Installation of Manufactured Homes, provides for the licensure of installers and the regulation of setup and installation of manufactured homes.
In addition to the above warranty statements of the USCMH, the following Civil Code provisions of our law of sales have application in this case:
C.C. art. 2524: The thing sold must be reasonably fit for its ordinary use.
When the seller has reason to know the particular use the buyer intends for the thing, and that the buyer is relying on the seller's skill or judgment in selecting it, the thing sold must be fit for the buyer's intended use or for his particular purpose.
If the thing is not so fit, the buyer's rights are governed by the general rules of conventional obligations.
C.C. art. 2529: When the thing the seller has delivered, though in itself free from redhibitory defects, is not of the kind or quality specified in the contract or represented by the seller, the rights of the buyer are governed by other rules of sale and conventional obligations.

Liability of Manufacturer  Fleetwood
By a supplemental petition, Daugherty first listed a specific factual charge against Fleetwood claiming that "the defects in the manufactured home existed at the time the manufactured home left the custody and control of Fleetwood." Thus, *231 Daugherty's claim against the manufacturer is under the Louisiana Products Liability Act, La. R.S. 9:2800.51, et seq.
In its motion for summary judgment, Fleetwood points out and argues that Daugherty experienced no initial problems with the home for the first three months. Also, as further reviewed below regarding Daugherty's claims against Magnolia and Barrett, the focus on causation in this controversy has centered on the unlevel site selected for the home and the weight of the added porch attached to the home. Those causes refute the above quoted charge against Fleetwood by showing that the defects were caused by circumstances that occurred after the home left Fleetwood's custody for which it has no responsibility. La. R.S. 51:911.25(A)(3).
In his opposition to Fleetwood's motion for summary judgment, Daugherty has not attempted to identify and prove any defect in the home resulting from Fleetwood's manufacturing process. Therefore, we agree with the trial court's ruling dismissing Daugherty's claims against Fleetwood because Daugherty has not shown that he can satisfy his evidentiary burden of proof at trial.

Liability of Retailer/Dealer  Magnolia
Magnolia admits in its brief that it was the seller of the home and that incidental to its sales contract with Daugherty, it was obligated to deliver, setup and level the structure. By a separate arrangement apart from its sales agreement with Daugherty, Magnolia contracted with Barrett to transport, install and level the manufactured home. From these admitted contractual relationships, we find that Magnolia owed the warranties set forth under the USCMH and obligations as a seller under our general law of sales. La. R.S. 51:911.25 and La. C.C. arts. 2524 and 2529. In particular, Magnolia, as the installer, warranted to Daugherty that the home would be installed according to the Minimum Standards for Installation of Manufactured Homes under La. R.S. 51:912.21, et seq. Additionally, Magnolia allegedly owed a warranty of fitness under La. C.C. art. 2524 depending upon its knowledge of Daugherty's intention for attaching the porch to the structure.
In his deposition testimony, Barrett identified the Fleetwood Home Installment Manual. The manual instructed that "a copy of this manual must remain with the home for reference by the occupant." Barrett identified on page 62 of the manual Fleetwood's instructions regarding added structures associated with the home, such as a porch. The manual provided that porches should employ a freestanding design having independent columns to support the additional weight and that the attached structure must not add additional gravity or wind load to the manufactured home.
In his deposition, Daugherty indicated that he did not receive the Fleetwood manual from Magnolia at the time of delivery and that Magnolia sent it only after the porch was added and the problems began. Daugherty also testified that he advised the Magnolia sales personnel of his plan to construct a full-length porch on the home. Daugherty claims that he requested a more expensive sliding glass door for enhanced access to the porch he wanted. His testimony indicated that he was not advised that the porch must be freestanding from the home.
From these facts, we find that there exists a genuine issue of material fact concerning Magnolia's obligation to warn Daugherty concerning the construction of the porch in relation to the home. Fleetwood's manual demonstrates that a purchaser of a manufactured home should be advised that a porch should be constructed in a freestanding manner so that its *232 weight will not cause the home to become unlevel. Moreover, Daugherty has charged that Magnolia had reason to know of his intended use of the home in relation to a separately constructed porch and that Magnolia failed to advise him that the manufactured home could not be used to support the porch. We find that this raises a dispute under La. C.C. arts. 2524 and 2529 regarding the warranty of fitness. Accordingly, the trial court's grant of summary judgment in favor of Magnolia is reversed.

Liability of Barrett
Since Barrett was hired by Magnolia to initially set up and level the home, Daugherty has no contractual relationship with Barrett. Daugherty's petition sounds in redhibition, products liability and contract and does not specifically allege facts indicating that Barrett breached any duty arising ex delicto in this case. Likewise, Daugherty makes no assertion that Barrett violated the Minimum Standards for Installation of Manufactured Homes, La. R.S. 51:912.21, et seq., upon the installation of the home.
The evidence produced with the motions for summary judgment suggests that the location chosen by Daugherty for the home is on an incline. The support blocks on one side of the home are higher off the ground than on the other side. While this incline could allow for water to run under the home and possibly erode or unsettle its foundation, Daugherty did not make that claim against Barrett. In fact, Daugherty vouched for the stability of the site when he stated that another mobile home occupied the same site for many years and that many loads of rock were placed there long ago to improve stability.
Accordingly, we find no showing by Daugherty that he will be able to prevail in any claim against Barrett because of Barrett's setup of the home. No problems were experienced with the home when it was first delivered. The home only repeatedly became unlevel from causes which were not shown to be related to Barrett's initial setup. Daugherty had no contract with Barrett. Therefore, the trial court's grant of summary judgment in favor of Barrett is affirmed.

Conclusion
For the foregoing reasons, the trial court's grant of summary judgment in favor of Fleetwood and Barrett is affirmed. The trial court's grant of summary judgment in favor of Magnolia is reversed. Costs of appeal are assessed to Magnolia.
AFFIRMED IN PART; REVERSED IN PART.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, STEWART, GASKINS, and CARAWAY, JJ.
Rehearing denied.