STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

05-1202

WHITNEY NATIONAL BANK

VERSUS

RANDY J. HEBERT, ET UX.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 78,941 L
HONORABLE MARILYN C. CASTLE, DISTRICT JUDGE

**********

**ELIZABETH A. PICKETT**
**JUDGE**
**********

Court composed of Marc T. Amy, Elizabeth A. Pickett, and J. David Painter, Judges.

**AFFIRMED.**

Clay J. LeGros
Wayne A. Maiorana Jr.
Newman, Mathis, Brady & Spedale
212 Veterans Blvd.
Metairie, LA 70005-0000
Counsel for Plaintiff/Appellee:
    Whitney National Bank

Silas B. Cooper  Jr.                        Robert H. Cooper
Cooper & Woodruff                           Pelleteri, Wiedorn & Cooper, LLC
P. O. Box 1213                              400 Poydras Street, Suite 1980
Abbeville, LA 70511-1213                    New Orleans, LA 70130
Counsel for Defendants/Appellants:          Counsel for Defendants/Appellants:
    Randy J. Hebert and                         Randy J. Hebert and
    Pamela S. Hebert                            Pamela S. Hebert

**Pickett, J.**

The defendants, Randy J. Hebert and Pamela S. Hebert, appeal a judgment of the trial court in favor of the plaintiff, Whitney National Bank (Whitney), awarding the plaintiff a deficiency of $12,715.36, plus interest at the rate of 9.5% accrued through November 6, 2002, in the amount of $486.49, plus interest on the unpaid principal balance from November 6, 2002, until paid, at the rate of 9.5% per annum, plus late charges in the amount of $228.83 and all costs of court. We affirm the judgment of the trial court.

## FACTS

On November 20, 2002, Whitney filed a deficiency judgment suit on a promissory note executed by Randy J. Hebert and Pamela S. Hebert seeking to collect the principal balance remaining due of $12,715.36, plus interest, late charges, attorney's fees, and costs. A bench trial on the matter took place on August 2, 2004. Judgment was rendered in favor of Whitney on October 1, 2004, and this appeal followed.

The following facts are undisputed. The defendants, Randy J. Hebert and Pamela S. Hebert, purchased a 1996 Terry travel trailer from Dixie Motors, Inc., on September 30, 1995. In connection with the sale, they executed a note and chattel mortgage (hereinafter referred to as the contract) for $29,528.58. As specified therein, the note was assigned to First National Bank of Houma, Louisiana. Thereafter, effective August 15, 1997, Whitney acquired all the assets of First National Bank of Houma via a merger. The contract contained an acceleration clause in the case of default, insolvency, or if the creditor "reasonably believe[d] [it]self to be insecure in the repayment of this Note." It also provided for attorney's fees in the

3

amount of 25% of the unpaid balance of the note.  Further, the note contained a confession of judgment and a waiver of notice, demand, or placing in default.

In December 1997, the Heberts defaulted on the loan.  A petition for executory process was filed some time early in 1998,and the trailer was seized by the sheriff in preparation for sale.  The Heberts' attorney contacted the bank and arranged to have the loan reinstated upon the payment of $5,000.00, which covered the costs of the pending sale (approximately $1,100.00), the arrearage,  and some prepayment.

In 2001 the note, once again went into default.  The defendants started missing payments with the payment due December 1, 2001.  In June 2002, Louis Marascalso, the "work out officer" for Whitney, who had been assigned the Heberts' loan when they first defaulted, contacted Mr. Hebert and told him that if the loan was not brought up to date, Whitney was going to have the trailer seized and sold at auction.

From this point on, there is some dispute as to what took place.  Mr. Marascalso testified that he suggested to Mr. Hebert that the defendants would come out better if they found a private buyer for the trailer as they would be spared the expense of a seizure and sale.  Mr. Marascalso  stated that he told Mr. Hebert that if they could find a buyer who offered a price satisfactory to the bank, he would release the title to that buyer and work with the Heberts to refinance the balance of the loan at a lower interest rate with lower payments.  According to Mr. Marascalso, he and Mr. Hebert had discussed the sale of the trailer many times over the preceding three years and Mr. Hebert had tried to sell it several times, but couldn't find a buyer willing to pay him the outstanding balance of the loan.  In a conversation early in June 2002, Mr. Hebert told Mr. Marascalso that he had found someone who was willing to pay $10,000.00 for the trailer.  According to Mr. Marascalso, he told Mr.

4

Hebert that the bank would be willing to release the title to the buyer for the payment of $10,000.00. Mr. Marascalso also stated that Mr. Hebert told him that the seller was in a hurry to make the purchase, so Mr. Marascalso told Mr. Hebert that he would arrange to have one of the bank officers in one of Whitney's Lafayette branches execute the act of sale and receive the proceeds. That officer could then fax confirmation to him, and he would send the title for the trailer to the buyer.

According to Mr. Hebert, Mr. Marascalso contacted the buyer and arranged the sale after Mr. Hebert supplied the name of the buyer. Mr. Hebert testified that after giving the buyer's name, Greg Smith, to Mr. Marascalso, the next thing he heard was "we [were] supposed to go to the bank." He stated that he was under the impression that when Mr. Marascalso told him the bank would release the title for $10,000.00, that he (Mr. Hebert) thought he would be released along with the title. At trial, Mr. Hebert testified that by getting Mr. Smith to buy the trailer, "It means it was over with. My problem–problems was over with. I had nothing to do with it no more." He also stated that no one at the bank told him he would be responsible for paying the remaining balance due on the note.

Mrs. Hebert also testified at the trial. She stated that she went with her husband to the bank on June 7, 2002, but that the "conversation was with Mr. Wade [Meaux, the bank officer], my husband, and Mr. Smith." She stated that she requested and was supplied with a copy of the act of sale before she and her husband left the bank. That act of sale, which was admitted into evidence, shows Randy and Pamela Hebert as the sellers and Gregory Smith as the purchaser. Also admitted into evidence was a copy of Mr. Smith's cashier's check drawn on IBERIABANK, payable to Randy J. Hebert and Whitney Bank, for $10,000.00. Mrs. Hebert testified

5

that Mr. Meaux didn't say anything to them at the time which would indicate that Whitney was going to pursue a deficiency judgment.

At the close of testimony, the Heberts, relying on former La.R.S. 19:9-505(3), argued that since they were not notified in writing within twenty days of the bank's intention to seek a deficiency judgment, Whitney was precluded from doing so. The trial judge disagreed finding that Whitney had never taken possession of the trailer and, thus, La.R.S. 19:9-505(3) was inapplicable.

In *Ford Motor Credit Co. v. Arnold*, 04-0042, p. 6 (La.App. 1 Cir. 12/17/04), 897 So.2d 705, 709 (emphasis ours), our colleagues of the first circuit considered a case wherein the plaintiff sought a deficiency judgment:

> The Contract executed by the Arnolds and Ford Motor constitutes a secured transaction under the current version of La. R.S. 10:9-102 et seq. Louisiana law defines a "security agreement" as "an agreement which creates or provides for a security interest." See former La. R.S. 10:9-105 (currently La. R.S. 10:9-102(a)(73)). As set forth in former La. R.S. 10:9-505(3) (currently at La. R.S. 10:9-620), *when a secured party accepts the voluntary surrender of collateral subject to a security agreement*, he is presumed to accept in full satisfaction of the underlying obligation unless he notifies the debtor, in writing or otherwise, of his intention to reserve in full his right to a deficiency judgment. Former Louisiana Revised Statutes 10:9-505(3) provided as follows:
>
> > The debtor's *abandonment or surrender* to the secured party of consumer goods subject to a security agreement, that is made after or in contemplation of the debtor's default shall be deemed to be a surrender for purposes of sale in accordance with the provisions of this Part 5. The secured party shall be presumed to have accepted the goods without the right to pursue a deficiency judgment unless he sends written notice or otherwise notifies the debtor within twenty days after he takes actual possession, to the effect that he is accepting possession of the goods with full reservation of deficiency rights.
>
> Thus, in order to pursue a deficiency judgment, a secured party bears the burden of proving that he notified the debtor, within twenty days *of taking actual possession of the collateral*, of his intention to

6

accept possession of the collateral with full reservation of his rights to a deficiency judgment.

In the case sub judice, the trial court found that Whitney (the secured party) had not taken possession of the Terry travel trailer (the collateral). We agree. The Heberts found the buyer; they set the price; and the bill of sale recites a sale from the Heberts to Gregory Smith. Although Whitney was threatening to seize the trailer, it had not done so at the time the sale was perfected. What the Heberts *thought* is of no consequence. We note they did not ask either Mr. Marascalso or Mr. Meaux if the sale of the trailer and the payment of the proceeds therefrom would release them from their entire debt. Clearly, it did not.

Accordingly, for the reasons stated above, the judgment of the trial court is affirmed. All costs of this appeal are assessed to the defendants, Randy J. Hebert and Pamela S. Hebert.

**AFFIRMED.**