STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2022 CA 0415

BMO HARRIS BANK N.A.

VERSUS

KENNETH GAUGLER

Judgment Rendered: **NOV 1 6 2022**

* * * * * * *

On Appeal from the 21st Judicial District Court
In and for the Parish of Livingston
State of Louisiana
Trial Court Docket Number 169916 Div. "F"

The Honorable William S. Dykes, Judge Presiding

* * * * * * *

| | |
|---|---|
| Dale M. Maas<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellant,<br>Kenneth Gaugler |
| Gary J. Giepert<br>New Orleans, Louisiana | Counsel for Plaintiff/Appellee,<br>BMO Harris Bank N.A. |

* * * * * * *

**BEFORE: WELCH, PENZATO, AND LANIER, JJ.**

**PENZATO, J.**

Defendant/appellant, Kenneth Gaugler, appeals from the trial court's judgment, which granted a motion for summary judgment in favor of plaintiff/appellee, BMO Harris Bank, and ordered that Mr. Gaugler is obligated to BMO Harris Bank in the amount of $126,250.61, plus interest of 9.06% per annum in accordance with the notes executed, costs of $541.36, and attorney fees of $3,700.00. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

From October 2016 to November 2019, Kenneth Gaugler, as debtor, entered into seven loan and security agreements with BMO Harris Bank, as lender, wherein BMO agreed to loan funds to Mr. Gaugler for the purchase of trucks and trailers to be used in connection with Mr. Gaugler's trucking business. Each agreement obligated Mr. Gaugler to repay a stated amount of funds (principal plus precalculated interest) to BMO by making a specified number of monthly installment payments. In total, Mr. Gaugler agreed to repay $1,101,939.56 in principal and precalculated interest to BMO as a result of the seven loan and security agreements he signed.

Each loan was secured by a truck or trailer identified in the agreement. Importantly, the agreements also included the following terms:

> **2.1 Security Interest.** Debtor hereby grants to Lender a first priority security interest in the Equipment to secure (a) payment of the Total Amount and all other obligations of Debtor to Lender under this Agreement, (b) the payment and performance of all other debts, liabilities, and obligations of Debtor of every kind and character, whether now existing or hereafter arising, to Lender, whether under this Agreement or any other agreement....
>
> \* \* \*
>
> **5.1 Events of Default.** Time is of the essence. An event of default shall occur if: (a) Debtor fails to pay when due any amount owed by it to Lender or any Affiliate of Lender under this Agreement, (b) Debtor or Guarantor fails to pay any Liabilities when due to Lender or any Affiliate of Lender or is otherwise in default under any other document, agreement or instrument....

2

**5.2 Remedies.** Upon the occurrence of an event of default, and at any time thereafter as long as the default continues, Lender may, at its option, with or without notice to Debtor (i) declare this Agreement to be in default, (ii) declare the indebtedness hereunder to be immediately due and payable, (iii) declare all other debts then owing by Debtor to Lender to be immediately due and payable, and (iv) exercise all of the rights and remedies of a secured party under the Uniform Commercial Code and any other applicable laws....Debtor shall also pay to Lender all expenses of retaking, holding, preparing for sale, selling and the like, including without limitation (a) the reasonable fees of any attorneys retained by lender , and (b) all other legal expenses incurred by Lender... Debtor agrees that Debtor is liable for any deficiency remaining after any disposition of Equipment after default.....

In April 2020, Mr. Gaugler and BMO entered into a Modification Agreement, wherein the parties agreed that no payments were due on the seven loans in April 2020, May 2020, and June 2020. The payment schedules were adjusted accordingly; however, all other terms of the original agreements remained in effect and unchanged. In a letter dated September 8, 2020, BMO granted Mr. Gaugler's request to defer two additional monthly payments and recalculated his monthly installment payments for the seven loans.

In March 2021, BMO filed suit against Mr. Gaugler, alleging that he breached the seven loan and security agreements, as well as the subsequent modification agreements, by failing to timely make the required monthly minimum payments.[1] BMO sought judgment in the amount of $705,844.15, plus attorney fees, costs, and disbursements.

---

[1] The seven agreements identified in BMO's suit are: (1) August 8, 2018 Loan and Security Agreement (identified as no. 5002) in the total amount of $66,696.48, secured by 2019 Fontaine Steel Drop Deck Flatbed, Serial Number 13N2532CXK1528379; (2) October 20, 2016 Loan and Security Agreement (identified as no. 7003) in the total amount of $224,933.36, secured by 2017 Peterbilt 389-Series, Serial Number 1XPXD49X3HD444678; (3) October 9, 2016 Loan and Security Agreement (identified as no. 9001) in the amount of $219,857.04, secured by 2020 Peterbilt 567, Serial Number 1XPCD49X6LD659415; (4) October 16, 2019 Loan and Security Agreement (identified as no. 3001) in the total amount of $95,979.00, secured by 2019 Eagerbeaver Lowbed (Lowboy), Serial Number 112SD5528KL08914; (5) November 26, 2019 Loan and Security Agreement (identified as no. 99001) in the total amount of $219,963.60, secured by 2020 Peterbilt 567, Serial Number 1XPCD49X9LD667167; (6) June 8, 2018 Loan and Security Agreement (identified as no. 6001) in the total amount of $212,379.84, secured by 2018 Peterbilt 389-Series, Serial Number 1XPXD49X4JD488355 and 2018 Thermo King APU, Serial Number HTG1117392; and (7) July 19, 2018 Loan and Security Agreement (identified as no. 1001) in the total amount of $62,130.24, secured by 2018 Fontaine 53'x102" Infinity Dropdeck, Serial Number 13N2532C2K1529834.

Mr. Gaugler answered BMO's petition, citing the agreements as the best evidence of their terms and conditions and denying that he was in default on any of the loans.

BMO filed the subject motion for summary judgment in August 2021 to obtain a deficiency judgment against Mr. Gaugler in the amount of $126,250.61. According to the affidavit of Micki Koepke, BMO's litigation specialist, the trucks and trailers that secured each loan and security agreement were seized after Mr. Gaugler defaulted on the notes and were sold. The net proceeds were applied to the total deficiency owed by Mr. Gaugler, resulting in a deficiency balance of $126,250.61.

Mr. Gaugler opposed the motion for summary judgment and relied on his own affidavit to dispute BMO's entitlement to a deficiency judgment.[2] In his affidavit, Mr. Gaugler denied that he was in default on all seven loans but admitted that he "got behind" on two of the loans. After getting behind on the payments, Mr. Gaugler spoke to "Preston," an employee of BMO, "about turning over the two vehicles only that were in arrears." However, BMO "demanded" that he turn in all of the vehicles. Mr. Gaugler attested that he told Preston where the vehicles were located and "understood BMO arranged to seize them." Mr. Gaugler further attested that he was "led to believe that by turning over all of the vehicles, including those vehicles on which he was current on payments due, he would not owe anything after that surrender." Mr. Gaugler was not asked to sign anything and has no documentation reflecting this purported agreement.

In its reply memorandum in support of its motion for summary judgment, BMO pointed out that, pursuant to paragraphs 2.1, 5.1, and 5.2, the agreements are

---

[2] Mr. Gaugler also filed a supplemental and amending answer to the petition in September 2021, asserting the affirmative defenses of "full payment and satisfaction, accord and satisfaction, full compensation, remission of the debts, extinguishment of obligations and full performance of compromise."

4

cross-collateralized and a default on one loan means a default on all others such that BMO may declare all indebtedness immediately due and payable. Additionally, paragraph 5.2 permits BMO to sell the equipment, and "Debtor agrees that Debtor is liable for any deficiency remaining after any disposition of [e]quipment after default."[3]

BMO's motion for summary judgment was granted at the conclusion of the contradictory hearing on October 12, 2021. A written judgment was signed on November 5, 2021, ordering that Mr. Gaugler is obligated to BMO in the amount of $126,250.61 "plus interest in accordance with the notes executed and all costs of these proceedings." This appeal by Mr. Gaugler followed.

On July 5, 2022, this court issued an interim order, noting that the November 5, 2021 judgment failed to specify the amount of "costs" of the proceedings and the amount or rate of interest.[4] Consequently, the precise amount awarded to BMO could not be determined from the face of the November 5, 2021 judgment, as required. *See D'Luca v. Kirkland*, 2020-0713, 2020-0714 (La. App. 1st Cir. 2/19/21), 321 So.3d 411, 414. Therefore, the case was remanded for the limited purpose of instructing the trial court to sign an amended judgment correcting the

---

[3] In his affidavit, Mr. Gaugler stated that he was not given notice either before or after the disposition of the trucks and trailers. Pursuant to La. R.S. 10:9-611(b), a secured party that disposes of collateral under La. R.S. 10:9-610 shall send a reasonable authenticated notification of disposition to the debtor. *See* La. R.S. 10:9-610(a) ("After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing.") Louisiana Revised Statutes 10:9-612(b) pertinently states that a "notification of disposition sent after default and ten days or more before the earliest time of disposition set forth in the notification is sent within a reasonable time before the disposition." BMO attached documents to its reply memorandum, which purportedly evidence its compliance with the notice obligations. However, these documents are not proper summary judgment evidence, since they are unauthenticated and are attached to a reply memorandum. *See* La. C.C.P. art. 966(A)(4) and (B)(3). Nevertheless, on appeal, Mr. Gaugler abandoned the argument that BMO failed to provide notice pursuant to La. R.S. 10:9-610 and did not raise this as an issue. Since BMO does not have the burden of proving compliance with the applicable provisions of Louisiana's Uniform Commercial Code - Secured Transactions, we find, on our *de novo* review, that BMO's failure to prove compliance with the notice requirements is not fatal to its ability to satisfy its initial summary judgment burden of proof. *See* La. R.S. 10:9-626(a)(1) and (2).

[4] Prior to the issuance of the interim order, this court issued a show cause order to the parties concerning the deficiencies in the judgment. The appeal was maintained upon receipt of the amended judgment.

5

identified deficiencies. Pursuant to this court's interim order, the appeal record was supplemented with an amended judgment, signed on July 22, 2022, which states that Mr. Gaugler is obligated to BMO in the amount of $126,250.61, plus interest of 9.06% per annum in accordance with the notes executed, costs of $541.36, and attorney fees of $3,700.00.

## ASSIGNMENTS OF ERROR

On appeal, Mr. Gaugler asserts that he "understood, from talking to Mr. Preston," that turning over all vehicles would "extinguish all obligations that he had to BMO." Thus, he asserts the trial court erred by failing to "presume and find such debts were remitted." Mr. Gaugler further asserts that summary judgment was improperly granted because genuine issues of material fact remain concerning the intent and understanding of the parties as to the remittance of the debt.

## DISCUSSION

### *Summary Judgment Burden of Proof*

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, summary judgment is appropriate. A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Simply put, a "material" fact is one that would matter at a trial on the merits. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits. Using the same criteria as the trial court, appellate courts review evidence *de novo* to determine whether summary judgment is appropriate. *Aucoin v.*

*Larpenter*, 2020-0792 (La. App. 1st Cir. 4/16/21), 324 So.3d 626, 632-33, *writ denied*, 2021-00688 (La. 9/27/21), 324 So.3d 87.

The burden of proof rests with the mover. La. C.C.P. art. 966(D)(1). When, as here, the moving party will bear the burden of proof at trial, he must support his motion for summary judgment with credible evidence that would entitle him to a directed verdict if not controverted at trial. *Aucoin*, 324 So.3d at 632, *citing Hines v. Garrett*, 2004-0806 (La. 6/25/04), 876 So.2d 764, 766 (per curiam).[5] Such an affirmative showing shifts the burden of production to the party opposing the motion and requires the opposing party to produce evidence to demonstrate the existence of a genuine issue for trial. *Aucoin*, 324 So.3d at 632, *citing Hines*, 876 So.2d at 766-67.

### *BMO's Burden of Proof*

It is undisputed that Mr. Gaugler agreed to the terms of the seven loan and security agreements in evidence, including his obligation to make monthly payments during the specified term. It also undisputed that Mr. Gaugler failed to make timely payments on at least two of the loans. Pursuant to paragraphs 5.1 and 5.2 of the agreements, this "event of default" triggered BMO's remedy option to declare all indebtedness immediately due and payable and to sell the equipment, which served as cross-collateral on all notes pursuant to paragraph 2.1. *See also* La. R.S. 10:9-109(a)(1) and La. R.S. 10:9-601, *et seq.* Finally, it is undisputed that Mr. Gaugler expressly agreed, by signing the loan documents, to be liable for any deficiency, as set forth in paragraph 5.2. BMO's evidence establishes the amount of the deficiency following the sale of the vehicles, which secured the notes. *See also* La. R.S. 10:9-615(a)(1), (a)(2), and (d)(2). Thus, BMO satisfied its initial

---

[5] A motion for directed verdict is appropriately granted when, after considering all evidentiary inferences in the light most favorable to the party opposing the motion, it is clear the facts and inferences are so overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict. *Wachovia Mortgage Corp. v. Hoover*, 2021-1035 (La. App. 1st Cir. 4/8/22), 342 So.3d 1, 4.

7

burden of proof and the burden shifted to Mr. Gaugler to produce evidence to demonstrate the existence of a genuine issue for trial. La. C.C.P. art. 966(D)(1); *see Aucoin*, 324 So.3d at 632.

### Remission

Mr. Gaugler asserts on appeal that he "understood there was an extinguishment/remission of the debts that would deny any right to a deficiency judgment for BMO." A remission of debt by an obligee extinguishes the obligation. Remission may be express or tacit. La. C.C. art. 1888. The affirmative defense of remission of a debt is never presumed unless it clearly appears that a creditor intended it.[6] *GE Commercial Finance Business Corp. v. Louisiana Hospital Center, L.L.C.*, 2010-1838 (La. App. 1st Cir. 6/10/11), 69 So.3d 649, 657. The burden of proving remission, express or tacit, rests with the party claiming the benefit. *GE Commercial Finance Business Corp.*, 69 So.3d at 657.

Mr. Gaugler's affidavit stated only that he "was led to believe" that he "would not owe anything" after "turning over" all trucks and trailers to BMO. Mr. Gaugler did not attest that Preston expressly stated, on behalf of BMO, that all debt would be extinguished if the vehicles were surrendered, nor did Mr. Gaugler explain what Preston said that "led" him to have this belief or understanding. Mr. Gaugler's barebones assertions do not establish that BMO intended to remit the debt and are insufficient to create a genuine of material fact as to whether BMO, either tacitly or expressly, agreed to remit the debt.[7]

---

[6] Contrary to Mr. Gaugler's argument, remission is not presumed unless the obligee voluntarily surrenders the instrument evidencing the obligation to the obligor. *See* La. C.C. art. 1889. However, there is no evidence that BMO surrendered the instruments of indebtedness to Mr. Gaugler. Conversely, the *acceptance* of remission is always presumed unless the obligor rejects the remission within a reasonable time. *See* La. C.C. art. 1890.

[7] For this reason, we find no merit in Mr. Gaugler's assertion that summary judgment was improper because questions remain regarding his subjective intent. *See Tozel v. Tozel*, 21-134 (La. App. 5th Cir. 11/3/21), 330 So.3d 1171, 1176 (Although summary judgment is seldom appropriate for determinations based on subjective facts of motive or intent, summary judgment may be granted on subjective intent issues when no issue of material fact exists concerning the pertinent intent.)

The jurisprudence cited by Mr. Gaugler is equally as unpersuasive. First, Mr. Gaugler relies on *Estate of Levitz v. Broadway*, 37,246 (La. App. 2d Cir. 5/14/03), 847 So.2d 170, to support his argument that summary judgment in favor of BMO was improper because a question of fact remains regarding whether the parties agreed to extinguish the obligations. In *Estate of Levitz*, the court of appeal reversed summary judgment granted in favor of the debtor upon finding a genuine issue of material fact remained regarding whether the decedent/obligor intended to remit the debt. The debtors' affidavits stated that the decedent/obligor "had declared to them...that she had forgiven payment of the promissory note at issue." *Estate of Levitz*, 847 So.2d at 172. However, according to the executrix of the obligor's estate, the obligor told the debtors "not to worry about paying me right now" and "[w]e will worry about the money later." *Estate of Levitz*, 847 So.2d at 172. These conflicting express statements purportedly made by the obligor created a genuine issue of material fact. *Estate of Levitz*, 847 So.2d at 174. In contrast, Mr. Gaugler's affidavit provided no details regarding any express representations made by Preston or anyone else associated with BMO.

Mr. Gaugler also cites *Ford Motor Credit Co. v. Arnold*, 2004-0042 (La. App. 1st Cir. 12/17/04), 897 So.2d 705, 709, which relied on former La. R.S. 10:9-505(3), to state, "when a secured party accepts the voluntary surrender of collateral subject to a security agreement, he is presumed to accept in full satisfaction of the underlying obligation unless he notifies the debtor, in writing or otherwise, of his intention to reserve in full his right to a deficiency judgment." Mr. Gaugler argues that this presumption applies here. We disagree.

The security agreement at issue in *Ford Motor Credit*, 897 So.2d at 706, 709 n.3, was entered into prior to the 2001 revision of Louisiana's Uniform Commercial Code - Secured Transactions, La. R.S. 10:9-101, *et seq*. The provision relied on in *Ford Motor Credit*, La. R.S. 10:9-505(3), is not contained in the

revised version of Louisiana Uniform Commercial Code Chapter 9, amended by La. Acts 2001, No. 128, § 1, eff. July 1, 2001. Thus, the cases applying La. R.S. 10:9-505(3), like *Ford Motor Credit*, are no longer authoritative on that point. *See* La. Prac. Secured Transactions § 10:86 (2022-2023 ed.)

Louisiana Revised Statutes 10:9-620 now sets forth the procedure for the acceptance of collateral in full or partial satisfaction of an obligation. "A debtor's voluntary surrender of collateral to a secured party and the secured party's acceptance of possession of the collateral does not, of itself, necessarily raise an implication that the secured party intends or is proposing to accept the collateral in satisfaction of the secured obligation under this section." La. R.S. 10:9-620, Uniform Commercial Code Comment 5.[8] The evidence in the record establishes that BMO did not utilize the "strict foreclosure" procedure set forth in La. R.S. 10:9-620, and Mr. Gaugler does not assert that it did. Instead, BMO declared all agreements to be in default upon Mr. Gaugler's admitted default on two loans and exercised its right to take possession of and sell the property and to seek a deficiency. *See* La. R.S. 10:9-609, 9-610, 9-615.

Finally, Mr. Gaugler cites *Jackson v. Slidell Nissan*, 96-1017 (La. App. 1st Cir. 5/9/97), 693 So.2d 1257. There, the summary judgment evidence established that the creditor communicated a settlement proposal to the debtor, through counsel, which suggested that the debtor settle her redhibition claim against the creditor by voluntarily surrendering the truck at issue, and, in exchange, the remaining debt owed to the creditor would be cancelled. *Jackson*, 693 So.2d at 1259. The evidence established that, after receiving this proposal, the debtor voluntarily surrendered the vehicle to the creditor. Mr. Gaugler asserts that

---

[8] An acceptance of collateral in a strict foreclosure occurs only if all applicable conditions of La. R.S. 10:9-620(a) are satisfied, and the secured party consents to the acceptance in an authenticated record or sends a proposal to the debtor. La. R.S. 10:9-620(b)(1), (2). *See* La. Prac. Secured Transactions § 10:86 (2022-2023 ed.).

10

summary judgment was improper in *Jackson* because an issue of fact remained regarding "what each party thought had happened" – which he likens to the present situation, where an alleged dispute remains concerning the parties' agreement. However, the issue of fact in *Jackson* was whether the parties perfected a contract through offer and acceptance. Reversing the grant of summary judgment, the court noted that, if "such a contract existed and [the debtor] performed her part of the agreement, [the creditor] no longer had any right to a deficiency judgment." *Jackson*, 693 So.2d at 1264. As previously explained, Mr. Gaugler's affidavit does not create a genuine issue of material fact concerning whether BMO agreed to remit the entirety of Mr. Gaugler's indebtedness. Thus, Mr. Gaugler's reliance on *Jackson* is misplaced.

Finding no merit in Mr. Gaugler's assignments of error, we find the trial court properly granted BMO's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment, as amended on July 22, 2022, granting a motion for summary judgment in favor of BMO Harris Bank and against Kenneth Gaugler, ordering that Mr. Gaugler is obligated to BMO in the amount of $126,250.61, plus interest of 9.06% per annum in accordance with the notes executed, costs of $541.36, and attorney fees of $3,700.00. All costs of this appeal are assessed against Kenneth Gaugler.

**AFFIRMED.**